# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **FRUIT CREATIONS, LLC, FRUIT CREATIONS OF CLARKSVILLE, LLC, FRUIT CREATIONS OF NASHVILLE, LLC, TONY CONSTANT, and KIMBERLY CONSTANT,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **Case No. 3:20-cv-00479** |
| | ) | **Judge Aleta A. Trauger** |
| **EDIBLE ARRANGEMENTS, LLC, NETSOLACE, INC., EDIBLE CONNECT, LLC, BERRY DIRECT, LLC, EDIBLE BRANDS, LLC, INCREDIBLE EDIBLES, LLC, and TARIQ FARID,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM

Before the court is the Motion to Compel Arbitration, Stay These Proceedings, and Stay Discovery (Doc. No. 18), filed jointly by defendants Edible Arrangements, LLC, Netsolace, Inc., Edible Connect, LLC, Berry Direct, LLC, Edible Brands, LLC, Incredible Edibles, LLC, and Tariq Farid. For the reasons set forth herein, the motion will be granted, and this matter will be stayed pending arbitration.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs filed their original Complaint in the Circuit Court for Davidson County, Tennessee in March 2020. (Doc. No. 1-1.) This Complaint was never served on any of the defendants. (Doc. No. 1, at 1.) In May 2020, the plaintiffs filed an Amended Complaint adding Incredible Edibles, LLC as a defendant (Doc. No. 1-22), and the defendants agreed to accept

service of the Amended Complaint on May 11, 2020. (Doc. No. 1, at 2.) The defendants removed the case to federal court on the grounds of complete diversity of citizenship on June 9, 2020.

Plaintiffs Kimberly Constant and her husband Tony Constant are the principle owners of the other three plaintiffs, Fruit Creations, LLC, Fruit Creations of Clarksville, LLC, and Fruit Creations of Nashville, LLC. (*See* K. Constant Decl., Doc. No. 30-1 ¶ 3.) All of the plaintiffs, including the Constants, have entered into Franchise Agreements[1] (referred to herein, collectively, in the singular) with defendant Edible Arrangements, LLC ("EA").[2] In the Amended Complaint, the plaintiffs allege that the defendants "operate a national franchise system under the name Edible Arrangements that sells sculpted fruit floral arrangements, gift baskets made with fresh fruit, chocolate-covered fruit, fruit smoothies, fruit salads, fruit and yogurt products, and other chocolate

---

[1] The referenced documents are: (1) August 27, 2017 Franchise Agreement between Edible International, LLC and Fruit Creations, LLC (Doc. No. 1-3); (2) October 10, 2018 Franchise Agreement between Edible Arrangements, LLC and Fruit Creations, LLC (Doc. No. 1-4); (3) September 11, 2012 Franchise Agreement between Edible Arrangements International, LLC and Fruit Creations of Nashville, LLC (Doc. No. 1-5); (4) March 28, 2014 Franchise Agreement between Edible Arrangements International, LLC and Fruit Creations of Clarksville, LLC (Doc. No. 1-6); (5) February 8, 2011 Franchise Agreement between Edible Arrangements International, Inc. and Kimberly D. Constant and Tony L. Constant (Doc. No. 1-8); and (6) June 2, 2009 Franchise Agreement between Edible Arrangements International, Inc. and Tony L. Constant and Kimberly D. Constant (Doc. No. 1-10).

[2] As reflected in Note 1, each Franchise Agreement is between one of the plaintiffs (or the two Constants) and one of several "Edible" entities, including Edible International, LLC (Doc. No. 1-3), Edible Arrangements, LLC (Doc. No. 1-4), Edible Arrangements International, LLC (Doc. Nos. 1-5 and 1-6), and Edible Arrangements International, Inc. (Doc. Nos. 1-8, 1-10.) The plaintiffs purport to explain that defendant Edible Arrangements, LLC operated under the name Edible International, LLC until March 1, 2012, under the name Edible Arrangements International, LLC from March 1, 2012 until July 2018, and, presumably, as Edible Arrangements, LLC thereafter. The plaintiffs do not acknowledge that Edible Arrangements International, LLC (a Delaware LLC) and Edible Arrangements International, Inc. (a Connecticut corporation) are not the same, and the remainder of their explanation does not correlate with the dates and names of the entities reflected on the Franchise Agreements themselves. However, at this juncture, there appears to be no dispute that defendant Edible Arrangements, LLC is a successor in interest or alter ego of the other "Edible" entities with which the plaintiffs entered into Franchise Agreements. Unless otherwise noted, any reference herein to "Edible Arrangements" (or "EA") is intended to encompass all four entities.

and fruit-related products through franchises throughout the United States, including the State of Tennessee." (Doc. No. 1-22 ¶ 1.) The plaintiffs collectively "own and operate six Edible Arrangements franchises located in Tennessee." (*Id.* ¶ 2.)

Defendant EA is a Delaware limited liability company with its principal place of business at 980 Hammond Drive, Suite 1000, in Atlanta, Georgia. (*Id.* ¶ 11.) Defendant Netsolace, Inc., a Delaware corporation with its principal place of business at 980 Hammond Drive, Suite 900, in Atlanta, Georgia, is "an affiliate of [EA] and is involved in selling, *inter alia*, computer hardware, licenses, proprietary computer software, and technology to Edible Arrangements' franchisees at a significant mark-up." (*Id.* ¶ 12.) Defendant Edible Connect, LLC, a Delaware limited liability company with its principal place of business at 980 Hammond Drive, Suite 1000, in Atlanta, Georgia, "is primarily involved in the [EA] franchise system website, business generation, and other Edible Connect program activities." (Id. ¶ 13.) Defendant Berry Direct, LLC is a Delaware limited liability company with its principal place of business in Perris, California. (*Id.* ¶ 14.) It is "an affiliate of [EA] and distributes, *inter alia*, containers, packaging supplies, product toppings, and fruit preparation equipment to Edible Arrangements' franchisees at a significant mark-up." (*Id.*) Defendant Edible Brands, LLC, a Delaware limited liability company with its principal place of business at 980 Hammond Drive, Suite 1000, in Atlanta, Georgia, is the parent company of EA, Netsolace, Edible Connect, and Berry Direct. (*Id.* ¶ 15.) Defendant Incredible Edibles, LLC, a Delaware limited liability company whose principal place of business the plaintiffs believe also to be at 980 Hammond Drive, Suite 1000, Atlanta, Georgia, is a "another franchise system" created by defendant Tariq Farid, "which is focused on selling the same fruit arrangements as [EA], but infused with Hemp Extract." (*Id.* ¶ 16.) Defendant Farid has been Chairman of the Board of EA since June 2000 and its Chief Executive Officer since October 2019, and he "maintains an

executive position in" all of the other entity defendants. (*Id.* ¶ 17.) He is alleged to have directly or indirectly controlled the conduct of all of the defendants and to have "materially aided and directed" the conduct described in the Amended Complaint. (*Id.*)

The claims in the Amended Complaint are based primarily "on [EA's] failure to provide Plaintiffs with an adequate and competent franchise system." (*Id.* ¶ 3.) The plaintiffs allege generally that EA "is failing to undertake appropriate marketing of the franchise system as required, and continues to increase fees and costs, and otherwise is acting unfairly, capriciously, and in bad faith to financially line its own pockets, to the detriment of Plaintiffs and all other [EA] franchisees." (*Id.* ¶ 24.) "Further, through its affiliated entities, which it controls, including Berry Direct, Edible Connect, and Netsolace (collectively, the 'Affiliate Defendants'), [EA] has unfairly and capriciously increased fees on a variety of products and services that Plaintiffs are required to buy or use, without any basis for doing so." (*Id.* ¶ 25.) They also allege that EA and Farid are funding a new venture, "Incredible Edibles," "with the monies paid by Plaintiffs and other [EA] franchisees" and are "improperly using [EA] staff and personnel . . . to develop this new venture." (*Id.* ¶ 124.)

Based on these and other allegations, the plaintiffs assert seven causes of action: (1) breach of contract against EA; (2) breach of the implied covenant of good faith and fair dealing against EA; (3) (3) violation of the Tennessee Consumer Protection Act ("TCPA") against all defendants; (4) misappropriation of funds against EA; (5) conversion against EA; (6) fraud in the inducement against EA; and (7) accounting against EA.

Shortly after removing the action to this court and before filing a responsive pleading, the defendants filed their Motion to Compel Arbitration and supporting Memorandum of Law (Doc. Nos. 18, 19), asserting that each of the plaintiffs entered into a binding Franchise Agreement that

requires arbitration of any and all claims against EA *and* its affiliates arising out of or related to the Franchise Agreement and the parties' relationship and that the claims asserted in the Amended Complaint are covered by the Franchise Agreement. With their Motion to Compel, the defendants submitted a copy of the June 11, 2020 letter to plaintiffs' counsel formally demanding arbitration. (Doc. Nos. 18, 19, 19-1.) The plaintiffs have filed a Response (Doc. No. 30), supported by the Declaration of Kim Constant (Doc. No. 30-1), opposing arbitration. The defendants have filed a Reply. (Doc. No. 31.)

## II.   THE ARBITRATION PROVISION

Each Franchise Agreement filed as an exhibit to the original Complaint contains an identical arbitration clause, which states in relevant part as follows:

Franchisee and [EA] agree that all controversies, disputes, or claims between [EA] and its affiliates, and their respective owners, officers, directors, agents and/or employees, and Franchisee (and/or its owners, guarantors, affiliates and/or employees) arising out of or related to

(1) this Agreement or any other agreement between them;

(2) [EA]'s relationship with Franchisee;

(3) the scope or validity of this Agreement or any other agreement between Franchisee and [EA] (including the validity and scope of the arbitration obligation under this Subsection, which [EA] and Franchisee acknowledge is to be determined by an arbitrator and not by a court); or

(4) any System Standard;

must be submitted for binding arbitration, on demand of either party, to the American Arbitration Association ("AAA"). The arbitration proceedings will be conducted by one arbitrator and, except as this subsection otherwise provides, according to the AAA's then current commercial arbitration rules. . . . All matters relating to arbitration will be governed by the United States Federal Arbitration Act (9 U.S.C. § § 1 et seq.). Judgment upon the arbitrator's award may be entered in any court of competent jurisdiction.

. . . .

> The provisions of this subsection are intended to benefit and bind certain third party non-signatories and will continue in full force and effect subsequent to and notwithstanding this Agreement's expiration or termination.

(*See, e.g.*, Doc. No. 1-3 § 20.F ("arbitration clause".)

## III.   STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") allows parties to a "contract evidencing a transaction involving commerce" to agree that certain disputes between them arising from such "contract or transaction" will be decided by an arbitrator rather than by a court. 9 U.S.C. § 2. Described by the Supreme Court as the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), Section 2 further provides that any such agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section embodies "a liberal federal policy favoring arbitration." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24). The principal purpose of the FAA is to ensure the enforcement of private arbitration agreements according to their terms; the broader purpose of allowing parties to submit grievances to arbitration is to facilitate "efficient, streamlined procedures tailored to the type of dispute" at issue. *Id.* at 344 (citations omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation."). Section 3 of the FAA requires courts to stay litigation of arbitrable claims pending arbitration of those claims, and Section 4 requires courts to compel arbitration in accordance with the terms of the agreement on the motion of either party to the agreement. *See* 9 U.S.C. §§ 3, 4.

Despite the liberal federal policy favoring arbitration agreements, arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit." *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) ("An agreement to arbitrate is fundamentally a matter of consent."). When considering a motion to compel arbitration, a district court must determine, as a threshold matter, if the parties agreed to arbitrate. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019); *Stout*, 228 F.3d at 714. The court generally must "use state law to assess the existence of an agreement." *GGNSC Louisville*, 932 F.3d at 485 (citations omitted). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor or arbitration." *Stout*, 228 F.3d at 714.

"Generally, 'whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide.'" *In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 381 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)) (some internal quotation marks omitted). However, the parties may instead "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 381–82 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)). Such an agreement, referred to as a "delegation provision," "is simply an additional, antecedent agreement" "to arbitrate a gateway issue," which "the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 382 (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). To be effective, a delegation provision must "clearly and unmistakably" show that the parties intended the question of arbitrability to be decided by the arbitrator. *McGee*, 941 F.3d at 865–66 (quoting *Howsam*, 537 U.S. at 83).

As the Sixth Circuit explained recently,

> [a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*. Stated another way, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (*absent a valid provision specifically committing such disputes to an arbitrator*) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement."

*In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 382–83 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 299–300 (2010)) (second emphasis added). In other words, whether an arbitration agreement was formed is always a question to be resolved by the court, and whether the arbitration agreement is enforceable or covers a particular claim is also typically a question for the court unless it has been effectively delegated to the arbitrator.

## IV.    DISCUSSION

### A.    The Parties' Arguments

In their Motion, the defendants argue that (1) when the plaintiffs entered into the Franchise Agreement, they expressly agreed to arbitrate any and all disputes arising out of or related to the Agreement, the franchise relationship, and any other agreement between the parties, including the question of arbitrability; (2) the arbitration clause in the Franchise Agreement is valid and enforceable; (3) the plaintiffs' claims fall within the scope of the arbitration clause; and (4) as a result, the court must stay this proceeding and discovery under § 3 of the FAA and compel arbitration under § 4.

In their Response, the plaintiffs do not contest the existence of the arbitration clause in the Franchise Agreement, that the Franchise Agreement implicates interstate commerce, the assumption that the defendants are all affiliated entities entitled to demand arbitration, or that the claims asserted in the Amended Complaint fall within the scope of the arbitration clause. Instead, the plaintiffs argue that the Motion to Compel should be denied because: (1) Tennessee procedural

and substantive law applies to this dispute, including to the question of whether the parties agreed to arbitrate; (2) under Tennessee law, the Connecticut choice-of-law provision in the Franchise Agreement is unenforceable because it violates Tennessee public policy and bears no reasonable relationship to the parties or the Franchise Agreement; and (3) "in reading and interpreting the highly unique 'Enforcement' Provisions in the Franchise Agreement in a manner that interprets and sheds light on one another and gives effect to each of the provisions, it is clear that the parties did not contractually agree to arbitrate their disputes." (Doc. No. 30, at 2.)

Regarding this third contention more specifically, the plaintiffs argue that the "Enforcement" section of the Franchise Agreement, of which the arbitration clause is but one subsection (§ 20.F), when read as a whole in a "way that gives effect" to each of the subsections within the "Enforcement" section, "it becomes evident that the Parties never agreed to arbitrate the claims that are the subject of this action." (Doc. No. 30, at 12.) Specifically, they contend that the arbitration clause must be "read in conjunction" with the "Severability Provision" (§ 20.A) and the "Cumulative Remedies Provision" (§ 20.E).

The portion of the severability clause to which they point states:

> [I]f, under any applicable and binding law or rule of any jurisdiction, any provision of this Agreement . . . is invalid, . . . the notice and/or other action required by the law or rule will be substituted for the comparable provisions of this Agreement, and [EA] may modify the invalid or unenforceable provision . . . to the extent required to be valid and enforceable or delete the unlawful provision in its entirety. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty the law permits which is subsumed within any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement.

(Doc. No. 30, at 14 (quoting Franchise Agreement, Doc. No. 1-3 § 20.A).) And the "Cumulative Remedies" clause provides that the parties' "rights under this Agreement are cumulative, and their exercise or enforcement of any right or remedy under this Agreement will not preclude their exercise or enforcement of any other right or remedy which they are entitled by law to enforce."

and which the plaintiffs do not actually contest, and that any questions regarding whether the arbitration clause is enforceable or pertains to a particular claim have expressly been delegated to the arbitrator. Consequently, they argue, the plaintiffs' arguments are simply beside the point. More substantively, they contend that (1) the question of which jurisdiction's substantive law governs the interpretation of the Franchise Agreements as a whole is immaterial to their Motion to Compel, because the FAA, not any state's law, governs enforcement of the arbitration clause, and the enforceability of the choice-of-law provision governing construction of each Franchise Agreement as a whole is a matter of contract interpretation reserved for the arbitrator; (2) the plaintiffs are simply incorrect in asserting that their state law claims, whether for fraudulent inducement or under the TCPA, are not arbitrable; and (3) reading the "Enforcement" section as a whole and harmonizing its provisions compels a conclusion that the parties intended to arbitrate any disputes arising from their franchise relationship.

## V. DISCUSSION

The court appreciates the creativity of the plaintiffs' convoluted arguments, but they are wholly without merit. First, the plaintiffs' arguments that Tennessee law should govern interpretation of the Franchise Agreement as a whole, including the arbitration clause, and that the Franchise Agreement's adoption of Connecticut law to govern construction of the contract is unenforceable as contrary to Tennessee's choice-of-law rules are largely academic, as these matters involve the interpretation of the Franchise Agreement and are clearly reserved for the arbitrator. (*See* Doc. No. 1-3 § 20.F (requiring arbitration of any disputes "related to" the Franchise Agreement).)

Second, the plaintiffs' claim that a reading of the "Enforcement" section of the contract as a whole leads to a conclusion that the parties did not intend to arbitrate their dispute borders on nonsense. The severability clause to which they point is clearly intended to permit severability or

modification of any provisions of the Franchise Agreement deemed unenforceable, while permitting enforcement of the remainder. It has no bearing on the arbitration clause, particularly because the plaintiffs present no viable argument that the arbitration clause is unenforceable under any state's law. Likewise, the cumulative rights clause simply appears to mean that, for example, bringing claims for breach of the Franchise Agreement would not extinguish or affect a party's ability to enforce other "rights or remedies" to which it is entitled by contract or under the applicable law. The clause does not detract from, or affect, the enforceability of the arbitration clause.

More critically, these provisions cannot be read to contradict or override the clearly expressed intention of the parties, as set forth in the arbitration clause, that "all controversies, disputes, or claims" "arising out of or related to" the Franchise Agreement, the franchise relationship, or "the scope or validity" of the Franchise Agreement—"including the scope and validity of the arbitration obligation" itself—"must be submitted for binding arbitration, on demand of either party." (Doc. No. 1-3 § 20.F.) This provision clearly and unmistakably delegates to the arbitrator the authority to determine "the scope or validity of the arbitration obligation"— that is, the authority to determine threshold questions of arbitrability. In addition, the arbitration clause provides that the arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA") and governed by the FAA. (*Id.*) The Sixth Circuit has held that "the incorporation of the AAA Rules [into an arbitration agreement] provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020); *see also McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (relying on the incorporation of the AAA Rules to find that the parties had "clearly and unmistakably" agreed to arbitrate "arbitrability" (citation omitted)); *In re:*

*Auto. Parts Antitrust Litig.*, 951 F.3d at 382 (reading *McGee* as holding that the incorporation of the AAA Rules "shows that the parties 'clearly and unmistakably' agreed that the arbitrator would decide questions of arbitrability" (citation omitted)). In this case, the clear language of the arbitration clause itself delegates to the arbitrator questions of arbitrability, and the incorporation of the AAA Rules simply reaffirms that intention.

The plaintiffs implicitly are arguing that their fraudulent inducement and TCPA claims, in particular, are not subject to arbitration and that Tennessee franchise law does not permit waiver of certain rights. These arguments too are without merit. TCPA claims may be subject to arbitration. *See Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 361 (Tenn. Ct. App. 2001) (holding that claims under the Tennessee Consumer Protection Act are subject to arbitration and recognizing that, to the extent that TCPA prohibits arbitration because it is an unlawful waiver of a plaintiff's right to proceed in a judicial forum, the TCPA is preempted by the FAA (citing *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984))). And the franchise statutes to which the plaintiffs cite provide that certain rights pertaining to the termination of franchises are non-waivable. *See* Tenn. Code Ann. §§ 47-25-1507(a) & -1509. The plaintiffs have not shown that their termination or renewal rights are implicated here or that these statutes actually prohibit arbitration of franchise-related claims. Moreover, even if the statutes were applicable and could be construed as prohibiting arbitration of certain claims, they too would be preempted by the FAA. *See Concepcion*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.")

Finally, while the Tennessee Supreme Court has indeed recognized that, under Tennessee law, fraudulent inducement claims are for the court rather than the arbitrator, *see Frizzell Constr.*, 9 S.W.3d at 85, the United States Supreme Court has held that, when an arbitration clause is

governed by the FAA, a claim of fraudulent inducement of the *entire contract* may be resolved through arbitration, in the absence of evidence that the contracting parties intended to withhold that claim from arbitration. *Rent-A-Ctr.*, 561 U.S. at 70; *see also Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403 (1967). On the other hand, if a plaintiff claims that the arbitration clause itself was fraudulently induced, the court in which the complaint was filed should generally address that claim prior to compelling arbitration. *Rent-A-Ctr.*, 561 U.S. at 71.

This principle pertains irrespective of which state's law may govern construction of the underlying contract of which the arbitration provision is a part. *Accord SL Tenn., LLC v. Ochiai Ga., LLC*, No. 3:11-CV-340, 2012 WL 381338, at *5 (E.D. Tenn. Feb. 6, 2012) (rejecting the plaintiff's argument that, because the parties' contract contained a Tennessee choice-of-law provision, Tennessee law governed whether its claim for fraud in the inducement was arbitrable under the contract). This is because "the underlying issue of arbitrability [is] a question of substantive federal law: 'Federal law in the terms of the [FAA] governs that issue in either state or federal court.'" *Southland Corp.*, 465 U.S. at 12 (quoting *Moses H. Cone*, 460 U.S. at 25 n.32). Thus, the Sixth Circuit has held under very similar circumstances that the inclusion of a choice-of-law clause in a contract, calling for application of a particular state's law in interpreting the contract, does not preclude application of the FAA or make the issue of whether the plaintiff was fraudulently induced to enter a contract non-arbitrable. *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926, 937 (6th Cir. 1998).

In *Ferro*, the court held that the district court had erred in relying on *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468 (1989), to reach a contrary conclusion, both because *Volt* is distinguishable and because it has been narrowed by more recent holdings. Relying instead on *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), the Sixth Circuit

found, in light of the "conspicuously broad" arbitration provision at issue there, which applied to "[a]ll controversies and claims arising out of or relating to this Agreement," that the choice-of-law provision was not an "'unequivocal inclusion' of the Ohio rule which arguably holds that the issue of fraudulent inducement is one for a court, and not an arbitrator, to decide." *Ferro*, 142 F.3d at 937.

Ferro and the cases upon which it relies are binding here. Consequently, the plaintiffs' reliance in this case on *Volt* and on *Frizzell* is unpersuasive. The Sixth Circuit and later Supreme Court opinions have rejected the construction of *Volt* that the plaintiffs propose. And *Frizzell*, though it stands for the principle that, under Tennessee law, fraudulent inducement claims are non-arbitrable, is simply not binding on this court. As a sister district court within this state has noted under similar circumstances:

> The Court acknowledges that the analysis and holding of *Frizzell*, which neither cites nor discusses *Ferro*, supports plaintiff's argument. However, the Court finds *Ferro* to be the controlling analysis for this Court given the applicability of the FAA in both state and federal courts. *Ferro* contains an extensive review of the Supreme Court's recent FAA decisions in regard to the interaction between a state law and the FAA when the laws are in conflict, when the contract at issue contains a generic choice-of-law provision which fails to specify whether it governs the arbitration clause, and where the arbitration clause contains language very similar to that at issue in this case.

*SL Tenn.*, 2012 WL 381338, at *8.

Of course, in the case at bar, the Franchise Agreement does not even contain a Tennessee choice-of-law provisions, much less a choice-of-law provision that unequivocally pertains to the arbitration clause itself. Rather, the arbitration clause provides that it is to be construed under the FAA, which simply further bolsters this court's conclusion that federal law applies. And the plaintiffs do not claim that the arbitration clause was fraudulently induced; they allege that the Franchise Agreement as a whole was fraudulently induced. (*See* Doc. No. 1-22 ¶ 153 ("[T]he

Franchisor's false representations that it would provide a franchise system to Plaintiffs were made knowingly and were intended to induce Plaintiffs to enter into franchise agreements . . . .").) It is clear that federal law applies to the question of arbitrability in this case, and federal law provides that "any challenge to the validity of the Agreement as a whole [is left] for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72.

## VI.    CONCLUSION

In sum, the plaintiffs' arguments are without merit. The court will grant the defendants' Motion to Compel Arbitration (Doc. No. 18) and, in accordance with 9 U.S.C. §§ 3 and 4, will stay this case in favor of arbitration. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge