## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **FRUIT CREATIONS, LLC** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00479** |
| | ) | **Judge Aleta A. Trauger** |
| **EDIBLE ARRANGEMENTS, LLC** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Before the court is the defendants' Motion for Attorneys' Fees and Costs ("Fee Motion").

(Doc. No. 35.) For the reasons set forth herein, the motion will be granted, though the fees awarded

will be slightly less than the sum sought by the defendants.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Fruit Creations, LLC, Fruit Creations of Clarksville, LLC, Fruit Creations of

Nashville, LLC, Tony Constant, and Kimberly Constant filed their initial Complaint on March 21,

2020 against defendants Edible Arrangements, LLC, [1] Netsolace, Inc., Edible Connect, LLC, Berry

Direct, LLC, Edible Brands, LLC, and Tariq Farid. (Compl., Doc. No. 1-1.) On May 4, 2020, the

plaintiffs filed an Amended Complaint adding Incredible Edibles, LLC, as a defendant. (Am.

Compl., Doc. No. 1-22.) The plaintiffs made no attempt to serve the original Complaint, but

---

[1] According to the defendants, Edible Arrangements, LLC operated under the name Edible
Arrangements International, LLC from March 1, 2012 until July 2018. Prior to that, the entity
operated under the name Edible International, LLC. Four of Plaintiffs' Franchise Agreements were
executed with Edible Arrangements International, LLC, one with Edible International, LLC, and
one with Edible Arrangements, LLC. (Doc. No. 36, at 4 n.2.)

defendants accepted service of the Amended Complaint on May 11, 2020 and removed the case to federal court on June 8, 2020 on the basis of diversity jurisdiction. (Doc. No. 1.) The Amended Complaint asserts claims related to a series of franchise agreements ("Franchise Agreements") between the plaintiffs, the franchisees, and Edible Arrangements, LLC for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act, misappropriation of funds, conversion, fraud in the inducement, and accounting. (Doc. No. 1-22.)

On June 11, 2020, defendants' counsel wrote to plaintiffs' counsel to demand that any and all claims asserted in the lawsuit and otherwise arising out of the Franchise Agreements and the parties' relationship be referred to arbitration (Doc. No. 19-1), citing Paragraph 20.F of the various Franchise Agreements (*see, e.g.*, Doc. No. 1-3, at 71 ¶ 20.F; Doc. No. 1-4, at 71 ¶ 20.F). The plaintiffs did not accede to this demand, so, on June 22, 2020, the defendants filed a Motion to Compel Arbitration (Doc. No. 18), which the plaintiffs opposed. On August 27, 2020, the court issued a Memorandum and separate Order, granting the Motion to Compel Arbitration and staying this matter pending completion of arbitration. (Doc. Nos. 33, 34.) The court found the plaintiffs' arguments in opposition to arbitration to be "creativ[e]" but "wholly without merit." (Doc. No. 33, at 11.)

The defendants thereafter filed their Fee Motion and separate Memorandum of Law (Doc. Nos. 35, 36), arguing that the Franchise Agreements authorized an award of attorney's fees incurred in enforcing the arbitration clauses in the parties' agreements. The plaintiffs oppose the motion (Doc. No. 38), and the defendants have filed a Reply (Doc. No. 41).

In this case, the defendants seek attorney's fees pursuant to a similar provision contained in each of the Franchise Agreements. For example, Paragraph 20.C of the 2017 Franchise

Agreement between Edible International, LLC ("EI") and Fruit Creations, LLC as "Franchisee" states:

> *If EI incurs costs and expenses (both internal and external) to enforce its rights or Franchisee's obligations under this Agreement due to Franchisee's failure* to pay when due amounts owed to EI, to submit when due any reports, information, or supporting records, or *otherwise to comply with this Agreement, Franchisee agrees to reimburse EI for all of the costs and expenses (both internal and external) that EI incurs, including, without limitation, reasonable accounting, attorneys', arbitrators', and related fees. Franchisee's obligation to reimburse EI arises whether or not EI begins a formal legal proceeding against Franchisee to enforce this Agreement.* If EI does begin a formal legal proceeding against Franchisee to enforce this Agreement, the reimbursement obligation applies to all costs and expenses (both internal and external) EI incurs preparing for, commencing, and prosecuting the legal proceeding and until the proceeding has come to a complete end (including appeals and settlements).

(Doc. No. 1-3, at 70 (emphasis added); *see also* Doc. No. 1-4, at 70; Doc. No. 1-5, at 89; Doc. No. 1-6, at 65; Doc. No. 1-8, at 63; Doc. No. 1-10, at 61.)[2]

Based on these provisions, defendants now seek to recover attorney's fees in the amount of $18,057 incurred through August 31, 2020, plus expenses in the amount of $471.60, for a total recovery of $18,528.60. Attorney Kevin Klein testifies in the Declaration submitted in support of the defendants' motion that he, as lead counsel, worked a total of 41.9 hours on this case, and his billing rate is $375 per hour; his associate Ryan Loofbourrow devoted 12.8 hours to the case, and his billing rate is $275 per hour; associate William Cox spent one hour on the case, and his billing rate is $200 per hour. (Doc. No. 37 ¶¶ 18, 20.) Mr. Klein attests that the hourly rates charged by the attorneys at his firm are comparable to, or less than, the prevailing rates in the community for similar work and that the hours he, Mr. Loofbourrow, and Mr. Cox spent on the case were reasonable and necessary. (*Id.* ¶ 21.) Detailed invoices are attached as an exhibit to the Declaration,

---

[2] The attorney's fee provision in each agreement varies slightly, but each requires the franchisee to pay the franchisor's attorney's fees incurred as a result of the franchisee's failure to comply with the agreement.

documenting the attorneys' time on the case from May 12, 2020 through August 31, 2020. (Doc. No. 37-1.) The costs reflected in the invoices are related to a Tennessee Secretary of State document request fee ($60), the filing fee for the Notice of Removal and exhibits ($400), and postage in the amount of $11.60. (Doc. No. 37-1, at 1, 4.)

The plaintiffs oppose the Motion for Attorneys' Fees (Doc. No. 38), and the defendants filed a Reply (Doc. No. 41).

## II. LEGAL STANDARD

The federal courts' "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)). Likewise, "[i]n the context of contract interpretation, Tennessee state law allows an exception to the American rule only when a contract specifically or expressly provides for the recovery of attorneys' fees." *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 362 F. Supp. 3d 446, 449 (M.D. Tenn. 2019) (citing *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008)). "If a contract does not specifically or expressly provide for attorney fees, the recovery of fees is not authorized." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009); *see also Starnes Family Office, LLC v. McCullar*, No. 10-2186, 2012 WL 566749, at *1 (W.D. Tenn. Feb. 21, 2012) ("Under Tennessee law, . . . contracts permitting the prevailing party to recover attorney's fees are enforceable, but strictly construed." (citing *Cracker Barrel*, 284 S.W.3d at 310–11)).

The party seeking attorney's fees bears the burden of proving that the requested fees are reasonable. *EPAC Techs.*, 362 F. Supp. 3d at 450 (citing *VRF Eye Specialty Grp., PLC v. Yoser*,

765 F. Supp. 2d 1023, 1034 (W.D. Tenn. 2011)). In deciding whether requested fees are reasonable, courts consider:

> 1. The time devoted to performing the legal service.
>
> 2. The time limitations imposed by the circumstances.
>
> 3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
>
> 4. The fee customarily charged in the locality for similar legal services.
>
> 5. The amount involved and the results obtained.
>
> 6. The experience, reputation, and ability of the lawyer performing the legal service.

*VRF Eye Specialty Grp.*, 765 F. Supp. 2d at 1034 (quoting *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn.1980)).

## III. DISCUSSION

In their Response in Opposition to the Fee Motion, the plaintiffs argue, first, that the Franchise Agreements "do not contemplate awarding fees and expenses to the Franchisor where the Franchisor seeks to compel arbitration and is successful in doing so," because (1) the Franchisor did not bring an action to enforce its rights as a result of the plaintiffs' failure to comply with the Franchise Agreements; and (2) the proceeding has not come to a "complete end," as required by the attorney's fee clause. (Doc. No. 38, at 3.) Next, the plaintiffs contend that the court does not have jurisdiction to rule upon a "claim for damages (in the form of attorney's fees and costs)," because the matter has been referred to arbitration, and the arbitrator has "the exclusive authority to award any fees and costs" under ¶ 20.F of the Franchise Agreements. (*Id.* at 4.) Relatedly, the plaintiffs argue that the defendants' motion is untimely, as it was filed after the court granted their motion to compel arbitration and administratively closed the case. (*Id.* at 6.) And finally, the plaintiffs object very generally that they "believe that the amount of fees and costs

being claimed by Defendants in connection with a single motion (without even having to attend a hearing) is not even remotely reasonable," and, therefore, that the court should conduct a hearing to determine reasonableness. (*Id.*)[3]

## A. Jurisdiction and Authority to Consider the Motion

The plaintiffs argue that, having referred this matter to arbitration, the court lacks jurisdiction to consider the Fee Motion. The court disagrees. First, as the defendants point out, the Federal Arbitration Act does not deprive the courts of jurisdiction over a case that the parties have agreed to arbitrate. *See Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) ("As for jurisdiction over controversies touching arbitration, the Act does nothing . . . ."). Rather, it simply makes arbitration agreements "'valid, irrevocable, and enforceable,' so long as their subject involves 'commerce.'" *Id.* at 582 (quoting 9 U.S.C. § 2).

Notably, moreover, the Order granting the Motion to Compel Arbitration did not dismiss the case altogether. Instead, it stayed and administratively closed the case, while expressly recognizing the ability of either party to request its re-opening. (Doc. No. 34.) Although re-opening was anticipated only upon the conclusion of arbitration, that does not mean the court was, in the interim, affirmatively divested of jurisdiction by the administrative act of the Clerk.

---

[3] They also argue that Connecticut law governs the construction of the Franchise Agreements, but they do not contend that Connecticut law concerning contractual attorney's fee provisions is appreciably different from Tennessee law. (*See* Doc. No. 38, at 2–3 (citing *Rizzo Pool Co. v. Del Grosso*, 689 A.2d 1097, 1105 (Conn. 1997), and *Matter of Cuisinarts, Inc.*, 115 B.R. 744, 749 (Bankr. D. Conn. 1990), respectively, for the propositions that Connecticut, too, adheres to the "American rule" and that contractual attorney's fee provisions should be strictly construed).) The court observes that the plaintiffs argued in their Response in Opposition to the Motion to Compel Arbitration that the Connecticut choice-of-law provision in each Franchise Agreement is unenforceable under Tennessee law. (Doc. No. 30, at 8–12.) The court finds no need to resolve this issue here, as the law is materially the same in both jurisdictions.

Accordingly, the court agrees with those courts, state and federal, that have found that they have jurisdiction to consider attorney's fee motions filed either in conjunction with motions to compel arbitration or after such motions have already been granted. *See, e.g.*, *Baggaley v. Wells Fargo Bank, N.A.*, No. CV1803605ABFFMX, 2018 WL 8804575, at *2 (C.D. Cal. Nov. 8, 2018) (granting defendant's motion for attorney's fees filed after the court granted its motion to compel arbitration, rejecting the plaintiff's claim that the court lacked jurisdiction to hear the motion because it was stayed pending arbitration); *ValueSelling Assocs., LLC v. Temple*, No. 09-CV-1493-JM (AJB), 2011 WL 13177274 (S.D. Cal. Feb. 10, 2011) (granting the defendant's Rule 60 motion to reopen the case for the purpose of filing a motion for attorney's fees associated with its motion to compel arbitration, after the arbitrator determined that it lacked jurisdiction to consider such a motion); *Aviation All. Ins. Risk Retention Grp., Inc. v. Polaris Enter. Grp., Inc.*, No. CV 17-35-M-DWM, 2017 WL 2799151, *5 (D. Mont. June 27, 2017) (compelling arbitration, staying proceedings, and awarding "fees associated with bringing" the motion to compel arbitration); *see also Acosta v. Kerrigan*, 58 Cal. Rptr. 3d 865, 870 (Cal. Ct. App. 2007) ("We ultimately conclude the agreement does not oust the trial court from jurisdiction to adjudicate [the defendant's] request for fees as to the proceeding occurring before that judge. Given the trial court is responsible for deciding a petition to compel arbitration, the trial court also should be responsible for resolving a claim for attorney fees made in connection with that petition to compel arbitration.").

Likewise, the plaintiff's related contention that the court lacks authority to hear the motion because the case has been administratively closed is wholly without merit. The court, indeed, directed the administrative closure of the case pending completion of arbitration, but, following the filing of the Fee Motion and the plaintiffs' response, it also entered an order directing the Clerk

to reopen the case to permit the court to rule upon the request for attorney's fees, which has been done. The court has authority to consider the motion.

### B. Interpretation of the Contractual Provisions

Although the plaintiffs quote in full the relevant language of the attorney's fee provision, they emphasize only those portions pertaining to the franchisor's right to recover attorney's fees incurred "to enforce its rights or Franchisee's obligations under this Agreement" and providing that, if the Franchisor begins formal legal proceedings, the reimbursement obligation extends to all fees incurred "until the proceeding has come to a complete end." (Doc. No. 38, at 3.) The plaintiffs argue, based on this language, that the defendants are not entitled to fees because they have not filed an action to enforce their rights under the Franchise Agreements (and, instead, have "deliberately fail[ed] to comply with the Franchise Agreements"), and, because neither the arbitrator nor the court has rendered a decision on the merits, the proceeding has not come to a "complete end." (Doc. No. 38, at 3.)

The plaintiffs appear to be deliberately misreading the attorney's fee provision. In relevant part, it provides that, if the franchisor

> incurs costs and expenses (both internal and external) to enforce its rights . . . under this Agreement due to Franchisee's failure to . . . comply with this Agreement, Franchisee agrees to reimburse [Franchisor] for all of the costs and expenses (both internal and external) that [the Franchisor] incurs, including, without limitation, reasonable . . . attorneys' . . . fees.

(Doc. No. 1-3, at 70.) Contrary to the plaintiffs' argument, the Franchisor's ability to invoke this clause is not limited to situations in which it seeks to enforce the Franchisee's obligation to pay amounts due under, and to submit records and reports in accordance with, the Franchise Agreements. Rather, this provision unambiguously authorizes the Franchisor to recover reasonable attorney's fees and costs incurred in connection with its efforts to enforce its rights under the Franchise Agreements—including its right to defend franchise-related claims against it in an

arbitral forum—and its right to reimbursement of attorney's fees and costs it incurred "due to" the plaintiffs' "failure to comply" with the arbitration clause of the Agreements. The Fee Motion presently before the court falls squarely within this provision.

The plaintiffs also contend that the claim for fees is premature because this matter has not come to a "complete end." This argument, too, is misplaced. The Franchisor is not required under this provision to institute formal legal proceedings. Rather, *if it does*, then the Franchisee's reimbursement obligation extends to "all costs and expenses," including attorney's fees, incurred in "preparing for, commencing, and prosecuting the legal proceeding and until the proceeding has come to a complete end (including appeals and settlements)." (*Id.*) Because the Franchisor did not "begin a formal legal proceeding," this latter clause simply has no application.

Likewise, the court is not persuaded by the plaintiffs' argument that only the arbitrator can award attorney's fees. The arbitrator is *authorized* to award attorney's fees as part of "any relief which he or she deems proper." (Doc. No. 1-3, at 71.) This clause does not mean that the arbitrator has the authority to award fees incurred in connection with a motion to compel arbitration at the outset. *Accord Baggaley*, 2018 WL 8804575, at *2 (finding it "both consistent with the contract language and preferable as a matter of practical policy to allow the trial judge rather than an arbitrator to decide the fee award issue which is essentially a part of the proceeding on the petition to compel arbitration decided by that trial judge" (quoting *Acosta*, 58 Cal Rptr. at 570–71)).

The plaintiffs' objections to an award of attorney's fees based on the contract language are without merit.

### C.     Reasonableness

The defendants have attested to the reasonableness of the hourly rates of each of the professionals who devoted time to the Motion to Compel Arbitration, as well as to the reasonableness of the number of hours expended. They produced detailed billing records reflecting

the activities billed. In response, the plaintiffs assert—in the most conclusory manner possible—that the court "should hold a reasonableness fee hearing," because the plaintiffs "believe that the amount of fees and costs being claimed by Defendants in connection with a single motion . . . is not even remotely reasonable." (Doc. No. 38, at 6.)

The Sixth Circuit has "consistently held a party complaining about attorney fees to a burden of stating their complaints with particularity." *Glover v. Johnson*, 138 F.3d 229, 252 (6th Cir. 1998). "Ideally, a party should raise objections with specificity, pointing out particular items, rather than making generalized objections to the reasonableness of the bill as a whole." *Id.* at 252–53 (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001)). The plaintiffs have failed to point to any specific part of the defendants' billing that they believe to be excessive, redundant, or unnecessary. While the district court must conduct its own review of the billing records for reasonableness, the plaintiffs' objections to reasonableness are too broad even to be addressed, and their request for a hearing will be denied as inadequately supported and unnecessary.

In reviewing a request for fees, the court

> must provide a concise but clear explanation of its reasons for the award. The district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why. Failure to provide such an explanation requires us to remand the case for further consideration.

*Smith v. Serv. Master Corp.*, 592 F. App'x 363, 366 (6th Cir. 2014) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997)).

The court's determination of reasonable attorney's fees begins by calculating the "lodestar"—multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Based on the court's familiarity

with attorney's fees in this jurisdiction, the court finds, first, that the hourly rates charged by the attorneys are reasonable and within the scope of other fee awards issued recently within this district. *See, e.g.*, *Howard v. Tennessee*, No. 3:16-cv-2829, 2018 WL 10151080, at *5 (M.D. Tenn. Dec. 14, 2018).

Regarding the number of hours spent, the Franchise Agreements' attorney's fee provisions specifically authorize the recovery of fees incurred as a result of the plaintiffs' failure to comply with the Franchise Agreements or, more specifically, their arbitration provisions. (*See, e.g.*, Doc. No. 1-3, at 70.) As set forth above, the defendants accepted service of the Amended Complaint on May 11, 2020 and removed the case to federal court on June 8, 2020 on the basis of diversity jurisdiction. (Doc. No. 1.) On June 11, 2020, counsel for defendants sent their letter to plaintiffs' counsel demanding that the case be referred to arbitration. (Doc. No. 19-1.) The court cannot find that the fees and costs associated with removal to federal court were necessarily incurred as a result of the plaintiffs' failure either to pursue the case in arbitration from the outset or their failure to agree to arbitration after receipt of the defendants' demand letter. It was the defendants' choice, not an obligation imposed by the plaintiffs, to remove the matter to federal court rather than to file a motion to compel arbitration in the state court proceeding. The court, therefore, will not award fees and costs incurred by the defendants prior to June 10, 2020, when the first reference appears in the billing invoices related to the preparation of a motion to compel arbitration. (*See* Doc. No. 37-1, at 1–3.) Subtraction of the amounts not related to compelling arbitration entails reductions of $460 in costs and $2,852.50 in fees from the total amount requested by defendants.[4]

---

[4] Specifically, a reduction in Kevin Klein's time in the amount of 1.8 hours from May 12, 2020 and 1.1 hours from May 18, 2020; .3 hours from William Cox's time on May 14, 2020; 6.2 hours of Ryan Loofbourrow's time on June 2, 4, and 8, 2020; and 1.1 hours of Kevin Klein's time on June 8, 2020. (*See* Doc. No. 37-1, at 1–3.)

Reviewing the remainder of the invoices, the court finds that the 44.6 hours of time devoted to researching, drafting, and filing the Motion to Compel Arbitration and supporting Memorandum, correspondence and communication with plaintiffs' counsel, and the drafting and filing of a Reply brief, spread out over the course of a month and a half, are reasonable, particularly in light of defense counsel's decision to reduce their August 7, 2020 invoice for services rendered through July 31, 2020 by 20%, for a reduction of $1,375.50. The court, therefore, will award fees in the total amount of $15,216.10.

## IV.    CONCLUSION AND ORDER

For the reasons set forth herein, the defendants' Motion for Attorneys' Fees (Doc. No. 35) is **GRANTED IN PART**, and the court hereby **AWARDS** to the defendants the fees and costs incurred in connection with drafting and filing their Motion to Compel Arbitration, in the total amount of **$15,216.10**. The plaintiffs' request for a hearing is **DENIED**, and the plaintiffs are **DIRECTED** to immediately remit payment of that sum to counsel for the defendants.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge